UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
MICHELLE J. IRONS,

              Plaintiff,

  -against-

THE CITY OF NEW YORK,

             Defendant.
------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1: 16-cv-3708 (FB)(RML)

*Appearances:*
*For the Plaintiff*:
CHUKWUEMEKA NWOKORO, ESQ.
Nwokoro & Associates, P.C.
30 Broad Street, Suite 1424
New York, New York 10004

*For the Defendant*:
ZACHARY W. CARTER, ESQ.
By: CHRISTOPHER COYNE
Corporation Counsel of the
City of New York
100 Church Street, Room 2-109h
New York, New York 10007

**BLOCK, Senior District Judge:**

      Plaintiff Michelle Irons, a sergeant for the Police Department of the City of New York ("NYPD"), alleges that her employer, the City of New York ("the City"), violated her rights under the 1964 Civil Rights Act, Title VII ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). The City moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, its motion is denied.

1

# I

The following facts, which are taken from the parties' Rule 56.1 statements and supporting documentation, are undisputed unless otherwise noted. Where disputed, they are presented in the light most favorable to Irons. *See, e.g,. Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). The Court will also "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor" of Irons. *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019)

On May 6, 2014, Irons received a command discipline ("CD") from Lieutenant Michael Almonte for discourteous behavior ("Discourtesy CD"), which she denies was warranted. On May 13, 2014, Almonte issued Irons a CD for this failing to inform Sergeant Joseph Pontercorvo that there was a prisoner at their precinct ("Prisoner CD"). She also denies that this CD was warranted.

Irons received, in March 2015 and January 2016, evaluations awarding her a "3.5" out of "5" from Lieutenant David Camhi and Lieutenant Michael Schroeder, respectively. Irons testified at her deposition that she worked harder than many of her white, male coworkers who received ratings of "4" and that the lieutenants who gave her those scores would make derogatory and sexual remarks about black women. She complained to Camhi, and on March 9, 2015, Camhi contacted

NYPD's Office of Equal Employment Opportunity ("OEEO") to self-report Irons's complaint.

Two weeks later, on March 23, 2015, Captain Paul Valerga, the precinct's commanding officer, requested that the NYPD Advocate's Office prepare Charges and Specifications against Irons for her Discourtesy CD. The charges issued two weeks later, and she was later found "Guilty" of discourtesy at a departmental disciplinary trial. On September 2, 2015, Irons filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In 2016, Valerga brought Charges and Specification against Irons for leaving her post. Irons denies that they were warranted.

Irons brings claims under Title VII, the NYSHRL, and the NYCHRL for (1) discrimination based on her race and gender, (2) retaliation, and (3) a hostile work environment.[1] The City argues that it should be granted summary judgment on all

---

[1] Because the standards for discrimination, retaliation, and hostile work environment claims are either the same or more stringent under Title VII than under the NYSHRL and the NYCHRL, the Court analyzes only whether the City has established that it is entitled to summary judgment on Irons's claims under Title VII. *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 151 n.6 (2d Cir. 2014) (Claims under the New York Human Rights Law are generally governed by the same standards as federal claims under Title VII." (internal quotation marks omitted)); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("[I]nterpretations of state and federal civil rights statutes can serve only as a *floor* below which the City's Human Rights law cannot fall." (internal quotation marks omitted)).

three claims. It claims that some alleged facts underpinning Irons's claims are time-barred under Title VII's statute of limitations. It denies that several adverse employment actions that Irons alleges qualify as such and that any adverse employment action was motivated by discriminatory or retaliatory intent. It also argues that there was no pervasive or severe harassment in Irons's precinct and that, even if there was, it cannot be held vicariously liable for such harassment.

## II

A court may grant summary judgment only if "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A. Time Bar

Title VII claims in New York must be filed with the EEOC within 300 days of the alleged unlawful employment practice. *Elmenayer v. ABF Freight Sys.*, 318 F.3d 103, 133–34 (2d Cir. 2003).

Here, Irons concedes that her Title VII claims must be based on unlawful employment practices that occurred after November 6, 2014, but she contends that none of her claims accrued prior to that date. Though her claims involve CDs that

occurred in May 2014, Irons's Title VII claims accrued in 2015, when Valerga initiated the Charges and Specifications against Irons.

## B. Race and Gender Discrimination Claims

The burden-shifting analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), governs employment discrimination claims brought under Title VII. *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016). Under that framework, a "plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

### 1. Irons's Prima Facie Case

To establish a prima facie case for employment discrimination, the plaintiff must show that: "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Walsh*, 828 F.3d at 75.

A plaintiff can establish that she experienced adverse employment actions because of her membership in a protected class by "showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a

5

similarly situated employee outside [her] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Id.* To succeed, the plaintiff must show that the comparators were subject to reasonably similar workplace standards and that their conduct was of comparable seriousness. *Id.* at 40.

Here, the City argues that several incidents that Irons claims were adverse employment actions do not qualify as such. However, it also admits that Irons's Discourtesy CD, Captain Valerga's recommended penalty for the Discourtesy CD, and the 2016 disciplinary charges constitute adverse employment actions. This issue, therefore, does not warrant a grant of summary judgment.

Further, Irons has provided sufficient evidence showing that Almonte treated similarly situated individuals differently. First, Almonte testified at his deposition that Aaronson, a white man, was discourteous to his female supervisor in front of the entire platoon; however, he testified that he chose not to issue a CD because he "[does not] like to issue [them]." Almonte Dep. 48. Though the City argues that Aaronson is not similarly situated because he is a police officer while Irons is a sergeant, the Court is not persuaded that police officers are not held to similar standards regarding being discourteous to their supervisors, and that is a question of fact for the jury. Second, Irons testified at her deposition that Olivio, a Hispanic,

female police officer, was discourteous to a sergeant in front of a large group of people, including Almonte, but never received any discipline. Accordingly, Irons has created an issue of fact regarding whether she experienced adverse employment actions because of discrimination.

**2. The City's Legitimate, Non-discriminatory Reason**

"[U]nless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

The City has provided non-discriminatory reasons for adverse employment actions taken against Irons. It argues, among other things, that Irons was issued the Discourtesy CD for being disrespectful to Almonte, that she was issued the Prisoner CD because she failed to tell Pontercorvo about the prisoner, and that she received a "3.5" out of "5" on her evaluations because she was often late and was doing the bare minimum as a supervisor. However, some of those reasons are supported by contested facts,[2] like whether she told Pontercorvo about the prisoner. If a jury

---

[2] The City argues that Irons is collaterally estopped from arguing that she was mistakenly issued the Discourtesy CD because that issue was decided at the January 15, 2016, departmental disciplinary trial. That argument fails because a state court

7

credited her account of that incident, it would also have to find that the City had no legitimate, nondiscriminatory reason for issuing the Prisoner CD. Because issues of fact remain, the Court cannot award summary judgment on Irons's discrimination claims, and it does not reach the issue of pretext.

### C. Retaliation Claims

The *McDonnell Douglas* burden-shifting framework also governs retaliation claims under Title VII. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Id.* (citation omitted). A causal connection between a protected activity and an adverse employment action can be established by showing temporal proximity between the protected activity and the employment action or by showing retaliatory animus. *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987).

---

never reviewed those agency findings and, therefore, they are not given preclusive effect. See *University of Tenn. v. Elliott,* 478 U.S. 788, 796 (1986) ("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *Nestor v. Pratt & Whitney,* 466 F.3d 65, 73 (2d Cir. 2006); *Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 CIV. 11316 (HB), 2009 WL 900739, at *6 n. 10 (S.D.N.Y. Apr. 3, 2009).

Here, the City contests only that there was a causal connection between Irons's protected activity and adverse employment actions. However, as Irons points out, there was a two-week period between when Camhi self-reported to OEEO that Irons had complained of discrimination and when Valerga requested that the NYPD Advocate's Office prepare Charges and Specifications against Irons for her Discourtesy CD. That temporal proximity is sufficient to establish a prima facie case. *See Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (concluding that two weeks was sufficient temporal proximity to support an inference of discrimination). Though the City may have legitimately brought these charges against Irons because of her CD, she also testified at her deposition that Valerga unfairly screamed at her and threatened to suspend her without cause. A jury could infer that Valerga had animus against Irons and that the request for charges was pretextual. Accordingly, the Court cannot grant the City summary judgment on Irons's retaliation claims.

### D. Hostile Work Environment Claims

"In order to prevail on a hostile work environment claim, a plaintiff must [show]: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Id.* at 124 (citation omitted).

### 1. Pervasive Harassment

To fulfill the first prong of a hostile work environment claim, "[t]he plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citation and internal quotation marks omitted). "In considering whether a plaintiff has met this burden, courts should examin[e] the totality of the circumstances." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (citation and internal quotation marks omitted) (alterations in original).

Here, Irons has presented enough evidence to raise a genuine issue of fact regarding whether the discrimination she experienced rose to the level of a hostile workplace. She testified at her deposition that Schroeder "repeatedly" told her that she was "hot" and that "he love[s] black girls." She also stated that Camhi would make "a lot" of derogatory and sexual remarks about African-American women. Because Irons's testimony demonstrates that those harassing comments were ongoing—rather than isolated incidents—she has created an issue of fact regarding whether the harassment was sufficiently pervasive to alter the conditions of her employment. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) ("While a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a

reasonable employee would find the conditions of her employment *altered for the worse.*" (internal quotation marks omitted)).

The City also argues that Irons cannot establish a hostile work environment claim because any harassment occurred before the relevant statute of limitations period and she has not established that there was a "policy or mechanism" of harassment that could tie conduct within the period to conduct preceding the period. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). Even if that were true, the record is ambiguous as to whether the harassment occurred within the statute of limitations period. That ambiguity must be resolved in Irons's favor.

2. **Employer Responsibility**

In hostile work environment claims where the harasser is the employee's supervisor, the employer will "be liable for a hostile work environment created by its supervisors." *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004). However, the employer can establish an affirmative defense by showing that "(a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* (internal quotation marks omitted).

Here, it is undisputed that Camhi and Schroeder were Irons's supervisors. Therefore, if a jury finds that they created a hostile work environment, the City can

11

only escape liability by establishing an affirmative defense. However, Irons has created an issue of fact regarding the City's affirmative defense because she testified at her deposition that Valerga reinstated Schroeder as her supervisor, despite knowing about Schroeder's sexual harassment. The Court, therefore, cannot award the City summary judgment on Irons's hostile work environment claim.

## III

At trial, a jury must resolve the following issues of fact: whether several of the alleged adverse employment actions qualify as such; whether Irons's comparators were similarly situated; whether the City's adverse employment actions were motivated by discriminatory or retaliatory animus; whether the City had legitimate, nondiscriminatory reasons for the adverse employment actions; whether Irons experienced pervasive harassment at her precinct; whether the harassment occurred within the statute of limitations period; and whether the City exercised reasonable care to prevent and correct the harassment.

**IT IS SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

August __, 2019
Brooklyn, New York